**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

Eastern District of Kentucky
FILED
OCT 30 2007
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 07-CV-104-DLB

ROY ANDREW MCDANEL     PLAINTIFF

VS:     **MEMORANDUM OPINION AND ORDER**

JOHN MOTLEY, Warden, et al.     DEFENDANTS

\*\*\*\* \*\*\*\* \*\*\*\*

Roy Andrew McDanel, an individual currently incarcerated in the Eastern Kentucky Correctional Complex ("EKCC"), has initiated the instant *pro se* civil rights action, pursuant to 42 U.S.C. § 1983 and has moved to proceed herein *in forma pauperis*. The motion will be granted by separate Order.

The complaint is now before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

In screening, as with all submissions by *pro se* litigants, the complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

## CLAIMS

McDanel complains of the conditions of his confinement in EKCC. More specifically, Plaintiff alleges that the conditions at the EKCC violates his Fourth and Fourteenth Amendment guarantee of due process and the Eighth Amendment prohibition against cruel and unusual punishment. The instant action is Plaintiff's third lawsuit filed in this Court. The other two cases were dismissed.[1]

## DEFENDANTS

As the Defendants, Plaintiff names EKCC Warden John Motley; Corrections Officer Buford Litteral; Lt. Barbara Green; Corrections Officer Ricky Elam; Corrections Officer Lt. Havens, #106; Corrections Officer Erica Brown; Sgt. Daphne Bentley; Corrections Officer Billy Patrick; the Kentucky Department of Corrections ("KDOC") Commissioner. He also indicates that the Defendants include unidentified persons, who are described as "[a]ll participating staff involved in incodences [sic]."

## RELIEF REQUESTED

The Plaintiff seeks injunctive relief.

## FACTUAL ALLEGATIONS

Plaintiff's allegations are contained in a handwritten document, signed on October 19, 2007, and numerous attachments, including a stack of KDOC documentary records about him and a memorandum. Record No. 2. The Court has construed the initial documents as a complaint which also includes a motion for preliminary injunctive relief. The following is a summary or construction of the facts and claims contained in these documents.

---

[1] See *McDanel v. Rees*, Ashland Civil Action No. 05-218 and *McDanel v. Vista Co.*, Ashland Civil Action No. 07-58.

2

McDanel describes himself as a gay man in need of medical treatment for mental health problems. His complaints begin on October 6, 2007, when an incident occurred which triggered a series of other events. He alleges that he was wearing his hair in a high pony tail to hide a balding area, but was ordered to take it down by Defendant Green. When he refused, saying that others were permitted to wear their hair in such a way, he was ordered into segregation. He writes that while Defendant Litteral was escorting him there,

> ... the plaintiff had a mental break as voices of his dead uncle and dead spouse told him to kill himself and be away from all the harassment.
> The plaintiff told C/O Litteral that he felt he was going to kill himself. He was asked what yes hang myself or something as he was mentally coming to a break.
> The C/O called for assistance and escorted the plaintiff to medical ware [sic] he was placed into 8H isolation unit and told to remove his cloths as staff were taking the mattres [sic] and all items from the cell.
> Plaintiff removed his belt and tied into a knot around his neck, then C/O Litteral came and placed his fingers under the belt ...

Record No. 2 at 3. The Officer managed to remove the belt.

Both Plaintiff and Litteral were taken to the medical department, the officer for attention to his fingers which had been injured when he tried to pry the belt loose. Medical "Accident/Extraordinary Occurrence Reports" were written about both. Record No. 2, part 5 at 8-10. Litteral and Green are alleged to have conspired together to write incident reports against McDanel so as to protect themselves. These resulting incident reports, as well as one from Defendant Patrick, are attached; they charge the prisoner with refusing to obey an order, making threatening statements, and physical action resulting in injury to an employee. *Id.* at 2-6.

After the night in the above-described conditions in isolation, the next morning, staff discovered that Plaintiff had red scratches on his arms. He admitted to officers that he used tiles broken from the floor to his cell to injure himself. In addition to another medical write-up, two

3

incident reports charged the Plaintiff with inflicting injury on himself and destroying property. *Id.* at 11-16.

McDanel claims that the conditions in that isolation cell were unbearable and served to increase his depression. He was in a paper gown and the temperature was so cold that he could not sleep on the metal bed and could not feel his toes. After the second day, on October 8th, he was moved to one of the segregation dorms and placed in "a make shift isolation cell," which was filthy and smelly but he did have a mattress. Plaintiff also claims that he was put on a 15-minute suicide watch. He complains, however, that the security camera watching him from the control tower had monitors where he could be seen even on the toilet, by staff and other inmates.

Plaintiff alleges that the monitors "went down," and as they were being repaired, on October 9, 2007, he tied a large piece of plastic "over his head and sat in the corner to sleep and die to escape the torcher [sic] he was being put threw [sic] with no mental health help." After Defendant Corrections Officers Brown and Bently found him, the Plaintiff was taken to the medical department for another medical report (*Id.* at 23) and another incident report charged him with inflicting injury on himself (*Id.* at 18-22).

After spending the night in the isolation cell again, on October 10, 2007, McDanel was returned to a dormitory. At some point that day, Defendant Green informed him that he was getting a haircut, and later that day "his hair and his dignity were removed." He was again placed into a cold isolation cell, evidently with the same monitoring system. The Plaintiff recounts several times he complained of the cold and wanted to see a doctor, but "[a]s of 10-19-07, the plaintiff still has not seen a doctor on this problem." He claims to have seen only a psychologist, who came once, talked to him only briefly, prescribed some medications, and promised to come back a month later.

4

Plaintiff alleges that a total of 6 incident reports have been written, all are fraudulent, and he has not had a supporting staff member help him to prepare his defense(s). As a result of the foregoing treatment, McDanel writes,

> The Plaintiff suffers declining mental functioning and hallucinations, do [sic] to prolonged lock up and exposure to segregation and not being treated for his illness, he has had loss of appetite and sleep do to the conditions he was forced into under observation with no help. This added to his psychological pain that was just a[s] physicaly painfull [sic] as the pain he was suffering physicaly [sic].
> . . .
> The plaintiff clearly has mental disorders that can not be properly treated or cared for within the Eastern Kentucky Correctional Complex, he is in danger to himself and is further harmed by lack of proper observation facility's and personnel.

Complaint at 13-14.

Plaintiff claims to have "filed grievances on the issues and asked for help multiple times," and "exhausted every avenue he has been able to do [sic] to his illness with no action." *Id.* Therefore, he has now come to this Court asking for an improvement in his current conditions and treatment at EKCC, protection from staff harassment there, a delay in disciplinary proceedings until he can be mentally evaluated and treated, transfer to a treatment program in the Kentucky State Reformatory (KRS) in LaGrange, Kentucky, and an investigation into staff conduct by the Kentucky State Police.

## DISCUSSION

McDanel does not state when he began his stay in EKCC. His prisoner account statement indicates that he arrived on February 22, 2007, suggesting that these mental and staff problems arose after the passage of 8 months at EKCC. However, the docket of this Court reveals that EKCC was his location two years ago, in 2005, when he filed his earlier section 1983 action.

Therefore, the Court is unsure as to how long the Plaintiff has been subjected to the current conditions or who diagnosed him as having the mental health "problems" or whether he complied with the KDOC administrative remedy program or on what basis he has confidence that the program at KSR will benefit him. However, based on the materials submitted with his complaint and for purposes of initial screening, the Court concludes Plaintiff has satisfied the exhaustion requirements relating to his instant complaint.

To establish a right to relief under § 1983, a plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the named defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Street v. Corr.Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

In the instant case, the Plaintiff has alleged that his conditions at EKCC violate his rights under several portions of the U.S. Constitution; he has alleged that certain state Defendants at that state prison have been culpable in imposing them; and he has named other Defendants with the presumed authority to grant him the injunctive relief he seeks. Therefore, summons will be ordered to issue for these Defendants to respond to his allegations.

However, a 42 U.S.C. § 1983 complaint must allege that specific conduct by the named defendant was the proximate cause of the Section 1983 injury. *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986). As to Defendants Ricky Elam, Lt. Havens, Erica Brown, Daphne Bentley, and Billy Patrick, the Plaintiff did not allege that these Defendants' conduct caused him to be deprived of any constitutional right. *See Thompson v. County of Medina, Ohio*, 29 F.3d 238 (6th Cir. 1994);

6

*see also Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991) (per curiam), *cert. denied*, 502 U.S. 1032, 112 S. Ct. 872 (1992). Therefore, these five (5) Defendants will be dismissed without prejudice.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) The following Defendant(s) in this action are dismissed, *sua sponte*, without prejudice: Ricky Elam, Lt. Havens, Erica Brown, Daphne Bentley, and Billy Patrick.

(2) The Clerk in the divisional office in which the case lies shall prepare and issue summons for EKCC Warden John Motley; EKCC Correctional Officers Barbara Green and Buford Litteral; and the Commissioner of the Kentucky Department of Corrections.

(3) The Divisional Clerk shall also prepare as many copies of the complaint as there are summonses and any required USM Forms 285. If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a Clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(4) After the Divisional Clerk's office has prepared the summonses, USM Forms 285, complaint copies, copies of this Order, and/or any other documents necessary to effectuate service, a Deputy Clerk shall forward said documents, by certified mail, to the United States Marshal's office in Lexington, Kentucky.

(5) The Divisional Clerk shall enter the certified mail receipt into the instant record.

(6) Within 24 hours of receipt of the documents listed in paragraph 4 above, the United States Marshal shall serve a summons, complaint copy, and copy of this Order on each named

7

Defendant named in paragraph 2 above and shall do so by certified mail, return receipt requested.

(7) The United States Marshal shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(8) Defendants shall file answer or other pleading responsive to the complaint within the time stated on the summons.

(9) ***Within 7 days of service of summons and complaint, Defendants shall file a response to the Plaintiff's motion for preliminary injunctive relief. Defendants' response shall describe the conditions of Plaintiff's current confinement, including all suicide monitoring.***

(10) The Plaintiff shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(11) For every further pleading or other document he wishes to submit for consideration by the Court, the Plaintiff shall serve upon each remaining Defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The Plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each Defendant or counsel. If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

(12) The Clerk is directed to serve a copy of this Order upon the Jailer/Warden of the institution in which the prisoner is currently confined and upon the Office of General Counsel for the Kentucky Department of Corrections in Frankfort, Kentucky.

This 29th day of October, 2007.



Signed By:
David L. Bunning
United States District Judge